SUTTON, Circuit Judge.
A federal jury convicted Richard Wa-sham of robbing a bank in Kentucky twice within a one-month period. We affirm.
*570 I.
On March 26, 2003, a slender black man wearing a dark hooded windbreaker walked into a U.S. Bank in Bowling Green, Kentucky. He approached a teller, pulled out a gun and demanded money, walking away with $4,257 in cash. Twenty-nine days later, someone matching the same description walked into the same bank, approached a teller, pulled out a gun and demanded money. This time he walked away with $4,615 in cash. After the second robbery a bank employee saw the suspect drive away in a cream-colored Mazda sedan with a license plate starting with the digits 2-1-3.
Several weeks later, Richard Washam robbed a PNC Bank in Florence, Kentucky. Wearing a dark hooded windbreaker, Washam approached a teller, pulled out a gun and demanded money. A bank employee saw Washam drive away in a tan Ford Explorer and reported this fact to the police, who caught Washam within minutes. Officers found cash, a dark blue hooded windbreaker and a handgun in Wa-sham’s car. Washam confessed and told an FBI agent that he robbed the bank to support his cocaine addiction. He pled guilty to robbing the Florence bank and to an accompanying gun charge.
Because Washam matched the description of the earlier robber, the FBI showed a photo array, containing Washam’s picture among the pictures of others, to the witnesses from the Bowling Green robberies. Three witnesses, including the two tellers whom the robber confronted, identified Washam as the perpetrator. The FBI also learned that, just a few days after the second Bowling Green robbery, Washam sold a car matching the description of the getaway car, a cream-colored Mazda sedan with a license plate starting with the digits 2-1-3, and purchased the tan Ford Explorer that he used as a getaway car after the Florence robbery.
Based on this evidence, a federal grand jury indicted Washam on a slew of bank robbery and firearms offenses. A jury convicted Washam on two counts of bank robbery, 18 U.S.C. § 2113(d), and two counts of using a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c)(1)(A). The district court imposed concurrent 77-month sentences for the two bank robbery counts and consecutive 300-month sentences for the two firearms counts. The total sentence was 677 months.
II.
Pretrial Identifications. Before trial, Washam moved to suppress identifications from the three eyewitnesses who fingered him as the Bowling Green robber from a photo array, arguing that the suggestiveness of the photo array made the identifications unreliable. The Constitution generally “protects a defendant against a conviction based on evidence of questionable reliability, not by prohibiting introduction of the evidence, but by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit.” Perry v. New Hampshire, 565 U.S. -, 132 S.Ct. 716, 723, 181 L.Ed.2d 694 (2012). But the Supreme Court has carved out a narrow exception from this general rule for eyewitness identifications: Due process prohibits the introduction of such evidence “if the ... identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.” Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). To exclude such identifications, a defendant must show that the identification procedure was unduly suggestive and the iden- *571 tifieations were not otherwise reliable. Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).
The district court agreed with Wa-sham that the photo array was unduly suggestive, as Washam’s picture was the only one that matched the suspect’s description. Yet the court held that the identifications were reliable after conducting a lengthy evidentiary hearing on the point. Whether an identification is reliable turns on (1) the witness’s opportunity to view the criminal, (2) his degree of attention, (3) the accuracy of his prior descriptions, (4) how certain he was when he made the identification, and (5) the length of time between the crime and the identification. Biggers, 409 U.S. at 199—200, 93 S.Ct. 375. After hearing from all three witnesses, the district court found that they each had a sufficient opportunity to view the robber, that they “all paid a fair amount of attention,” that their descriptions of the robber “were all fairly accurate,” that they were “[a]ll fairly definite about” their identifications, and that the lapse of two months between the robberies and the identifications was “insignificant.” JA 207. We see no clear error in these five factual findings, and thus we agree with the district court’s conclusion that the identifications were reliable. See United States v. Meyer, 359 F.3d 820, 824 (6th Cir.2004).
It is true, as our colleague points out, that only one of the three witnesses who identified Washam from the photo array also positively identified him at trial. But the trial took place more than three years after the robberies, making it unsurprising that some witnesses’ memories would fade in the interim. Also unsurprising is that Washam’s appearance had significantly changed in the interim: he had a shaved head and a goatee at the time of the robbery, but he had a full head of hair and a full beard at trial. Rather than calling into question the reliability of these witnesses’ far-more-immediate pretrial identifications, this case shows why pretrial identifications sometimes have greater evi-dentiary value than in-court identifications. See United States v. Hines, 470 F.2d 225, 228 (3d Cir.1972); accord Gilbert v. California, 388 U.S. 263, 272 n. 3, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). Indeed, although they could not identify Washam in court, the two other witnesses testified they were confident about the identifications they made from the photo array at the time they made them.
Washam separately argues (through a pro se brief) that his attorney performed ineffectively during the hearing on the eyewitness identifications because (1) he did not ensure that Washam was present at the hearing, and (2) he did not call Dr. Solomon Fulero, an expert on cross-racial identifications, as a witness. As a general rule, we do not consider ineffective-assistance claims on direct appeal; we usually wait to consider them in post-conviction proceedings under 28 U.S.C. § 2255. United States v. Wunder, 919 F.2d 34, 37 (6th Cir.1990). Yet Washam’s claims fit within an exception to the rule, as this record “is adequate to assess” the claims on the merits. Id.
Washam, first of all, was not present during the evidentiary hearing because he asked not to be there. His attorney filed a motion before the hearing asking that Washam be excused so that the witnesses, whose eyewitness identifications Washam was challenging, would not see him in court. The district court confirmed with Washam’s attorney at the start of the hearing that Washam did not wish to be there. Washam responds that his attorney lied and that he wanted to be at the hearing, but the district court credited the attorney’s contrary statement. No error *572 occurred, and, even if that were not the case, Washam offers no theory of prejudice.
Neither was Washam’s attorney ineffective for failing to call Dr. Fulero as an expert witness. Dr. Fulero offered extensive testimony about the (un)reliability of eyewitness identifications during the trial itself. In rejecting Washam’s motion for a new trial, the district court reviewed the eyewitnesses’ testimony from the eviden-tiary hearing in light of Dr. Fulero’s trial testimony and concluded that it still would have admitted the identifications even if Dr. Fulero had testified. We thus need not decide whether the failure to call Dr. Fulero amounted to deficient performance because Washam cannot demonstrate prejudice.
Washam attacks the district court’s refusal to instruct the jury that cross-racial identifications are inherently suspect. Jury instructions regarding eyewitness identifications “are within the discretion of the trial court,” and special instructions “need only be given if there is a danger of misidentification due to a lack of corroborating evidence.” United States v. Jackson, 347 F.3d 598, 607 (6th Cir.2003). In this instance, other evidence corroborated the three identifications—at a minimum because each identification confirmed the other and because evidence connected Washam to the getaway car from the Bowling Green robberies. No abuse of discretion occurred.
Evidence of the Florence Bank Robbery. Washam argues that the district court erred by admitting evidence that he robbed the PNC Bank in Florence just a few weeks after the Bowling Green robberies. (Washam had already pled guilty to that crime.) Rule 404(b) of the Federal Rules of Evidence bars admission of “[e]vi-dence of other crimes, wrongs, or acts ... to prove the character of a person in order to show action in conformity therewith.” Washam does not deny that he robbed the Florence bank, permitting the admission of this evidence so long as (1) it has a valid use other than proving Washam’s character and (2) it is not more prejudicial than probative under Rule 403. United States v. Poulsen, 655 F.3d 492, 508 (6th Cir.2011).
The evidence of the Florence robbery served at least two non-propensity purposes. In the first place, it showed motive. After his arrest, Washam admitted to an FBI agent that he robbed the Florence bank to support his cocaine addiction. Evidence of a defendant’s drug addiction is “extremely probative” of his “motive” for committing a robbery. United States v. Cody, 498 F.3d 582, 591 (6th Cir.2007). That probative force is even greater where the defendant admits that, within weeks of the crimes, he committed a similar crime in order to support the same addiction.
In the second place, this evidence helped (though less so) to show identity. The similarities between the Bowling Green and Florence robberies suggest that the same person with the same mode of operation committed all three of them. Although other crimes need not “be identical in every detail” to establish a pattern, the probative force of those crimes depends on the extent to which they share “sufficient distinctive similarities]” with the other crimes charged. United States v. Perry, 438 F.3d 642, 648 (6th Cir.2006). All three robberies shared similarities, some of which could be called distinctive. In each case, the robber approached the teller in a friendly way, acted by himself, made no attempt to go over the counter, wore a dark blue or black windbreaker with a hood and held the gun with his left hand and took the money with his right. While *573 this may not amount to a unique signature crime, the reality is that the district court could admit evidence of the Florence robbery so long as these two permissible objectives of the evidence — motive and identity, taken together — were more probative than any impermissible uses were prejudicial. See Fed.R.Evid. 403; Poulsen, 655 F.3d at 508. That was the case here.
Fortifying that conclusion is the court’s limiting instruction, which told the jury that Washam was “not on trial for the Florence bank robbery” and that they could consider evidence of that robbery “only insofar as it may apply to the government’s claim of motive and identity.” JA 452. The district court repeated this limiting instruction two more times. Such limiting instructions go a long way to reducing any possible prejudice from Rule 404(b) evidence. See United States v. Lattner, 385 F.3d 947, 958 (6th Cir.2004). The district court did not abuse its discretion by admitting evidence about the Florence robbery.
But even if that were not the case, any error was harmless. See Fed.R.Crim.P. 52(a). The other evidence in the record of Washam’s guilt was “overwhelming.” United States v. Hardy, 643 F.3d 143, 153 (6th Cir.2011). Three different eyewitnesses identified Washam as the Bowling Green robber, and Washam sold a car matching the description of the Bowling Green robber’s getaway car (down to having 2-1-3 as the first three digits of the license plate) within weeks of the robbery. This evidence “eliminares] any fair assurance that the conviction was substantially swayed by” a potential Rule 404(b) error. Id.
Washam separately objects to the admission of the gun that he used during the Florence robbery, claiming he stole the gun from a neighbor after the Bowling Green robberies occurred so it could not have been the same gun used in those robberies. Def. Supp. Br. at 14-16. Wa-sham has nothing to support this contention other than his say-so, and admits he never disclosed this (purported) fact to anyone before the trial — not to the government, not to the district court, not even to his own lawyer. Id. The district court could not have excluded the gun on grounds never raised.
Prosecutorial Misconduct. Washam argues that the district court erred by denying his motions for a mistrial based on two instances of prosecutorial misconduct. We review the denial of such motions for abuse of discretion, United States v. Cope, 312 F.3d 757, 779 (6th Cir.2002), and we see none here. Washam first complains about the prosecutor’s request that he show his teeth so a teller from the Florence bank could identify him. Wa-sham refused and his attorney moved for a mistrial. Even if we assume that the prosecutor’s request was improper, there was nothing “flagrant” about it, as required to obtain a new trial on this ground. United States v. Wells, 623 F.3d 332, 337-38 (6th Cir.2010). This was a single isolated request, the district court instructed the jury to disregard it, and it caused Washam little (if any) prejudice. At most Washam argues that his refusal to comply with the request “placed [him] in a negative light before the jury,” Def. Br. at 19, but any such prejudice was minimal in comparison with “the overall strength of the evidence against” him. Wells, 623 F.3d at 338.
Washam next argues that the district court should have declared a mistrial when the prosecutor said during his opening statement: “You’re not going to hear every single thing about this case or about Mr. Washam. Lot of that would not be permitted for us to put on. Lot of it we don’t have.” R. 178 at 150. There was nothing improper about this statement. *574 In the preceding sentence the prosecutor asked the jury “not [to] base your verdict on speculation.” Id. In context, the prosecutor was merely informing the jury that some evidence about the crime and Wa-sham’s past would not be admitted, and they should base their verdict only on the evidence in the record — an entirely proper admonition.
Sentencing. Washam faults the district court for not stating on the record during sentencing that it knew the guidelines were advisory and for not explaining why it ordered the sentences on Washam’s two § 924(c) convictions (for using a firearm during a violent felony) to run consecutively to each other. A district court judge is not required to state on the record that the guidelines are advisory, United States v. Bailey, 488 F.3d 363, 367 (6th Cir.2007), and running the § 924(c) sentences consecutively was not the district court’s decision to make; the statute itself requires that they be consecutive, 18 U.S.C. § 924(c)(1)(D)(ii).
Jury Composition. Washam separately challenges the racial composition of the grand jury that indicted him and the veni-re from which his petit jury was selected under the Jury Selection and Service Act, 28 U.S.C. § 1861, et seq. The Act creates a statutory right for criminal defendants in federal court to have “grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes.” Id. § 1861. Defendants must raise any claims under the Act “before the voir dire examination begins.” Id. § 1867(a). Washam did not raise his jury-composition challenge until almost five months after his trial. His claims under the Act are therefore time-barred. Id.; see United States v. Ovalle, 136 F.3d 1092, 1098 (6th Cir.1998).
Washam also appears to raise a Sixth Amendment challenge to the composition of the jury. Def. Supp. Br. at 9. But he did not raise any such challenge in the district court, which forfeits the point here. See Ovalle, 136 F.3d at 1107. Washam would need to demonstrate “cause” and “prejudice” to overcome this omission, see id., and he has not tried to do so.
Speedy Trial. Washam complains that his trial did not start in a timely manner, violating the Speedy Trial Act and the Sixth Amendment. But Wa-sham forfeited his Speedy Trial Act objection because he did not file a motion to dismiss the indictment before trial. 18 U.S.C. § 3162(a)(2). His constitutional claim fares no better. Four factors guide our analysis of a constitutional speedy-trial claim: (1) the “[ljength of delay,” (2) “the reason for the delay,” (3) “the defendant’s assertion of his right” and (4) “prejudice to the defendant.” Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Although the three-year delay between Washam’s arrest and trial is “presumptively prejudicial,” United States v. Young, 657 F.3d 408, 414 (6th Cir.2011), the other three factors defeat the claim: The key reason for delay was the litany of pre-trial motions that Washam filed, see United States v. Bass, 460 F.3d 830, 837 (6th Cir.2006); Washam never asserted his speedy-trial right by filing any motions in the district court; and aside from speculating that certain unnamed alibi witnesses now have faded memories, Washam identifies no prejudice.
Stipulation of prior felonies. Last of all and least of all, Washam argues that the district court violated Rule 403 of the Federal Rules of Evidence and Old Chief v. United States, 519 U.S. 172, 191-92, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), by not allowing him to stipulate to his prior felony convictions. But the Old Chief rule would *575 apply only to Washam’s felon-in-possession charges, 18 U.S.C. § 922(g), and those charges were bifurcated before trial and dismissed after the jury verdict.
III.
For these reasons, we affirm.