NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0277n.06

No. 12-3242

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Mar 20, 2013*
DEBORAH S. HUNT, Clerk

CECIL HOWARD,                                         )
                                                      )
      Petitioner-Appellant,                     )
                                                      )
v.                                                    )    On Appeal from the United States
                                                      )    District Court for the Southern
WARDEN, Lebanon Correctional Institution,             )    District of Ohio
                                                      )
      Defendant-Appellee.                       )

Before:      BOGGS, ROGERS, and STRANCH, Circuit Judges.

      BOGGS, Circuit Judge.  Before us is Cecil Howard's appeal of the district court's denial of his petition for writ of habeas corpus.  Howard was indicted under Ohio law for attempted murder and aggravated robbery, both with a firearm specification, as well as for having a weapon while under disability.  All three indictments arose from the two-man robbery of a convenience store in Springfield, Ohio, during the summer of 2002.

      At Howard's trial, Donald Little, a store employee, testified about a pretrial identification of Howard that he made from a police photo array.  Little also made an in-court identification of Howard.  During both the pretrial and in-court identifications, Little identified Howard as the same man that he saw a few blocks away from the scene of the crime shortly after the robbery was committed.  Howard objected to the introduction of this identification, arguing that it was unreliable. The trial court overruled Howard's objection, and he was subsequently convicted of all three

charges. On direct appeal, Howard argued that, due to the motives, biases, and personal knowledge of Little and his wife, the photo lineup resulting in Little's identification was unduly suggestive and also unreliable. Accordingly, Howard asserted that introduction of the identification at trial violated his Fifth and Fourteenth Amendment rights to due process, a claim the Ohio Court of Appeals rejected. The Ohio Supreme Court refused to review Howard's undue-suggestiveness claim.

Howard then filed a petition for writ of habeas corpus in the United States District Court for the Southern District of Ohio, pressing, *inter alia*, his undue-suggestiveness claim. A magistrate judge issued a report and recommendation (R&R) stating that Howard's petition should be granted, but only as to his undue-suggestiveness claim. The district court, however, relying on *Perry v. New Hampshire*, 132 S. Ct. 716 (2012), a Supreme Court opinion released after the issuance of the R&R, declined to adopt the R&R and denied Howard's petition in full. Noting its divergence from the outcome recommended in the magistrate judge's R&R, however, the district court issued a certificate of appealability as to Howard's undue-suggestiveness claim, and Howard now appeals. For the reasons that follow, we affirm the ruling of the district court.

**I**

**A**

Howard's convictions arose out of the June 22, 2002 robbery of a Beverage Oasis convenience store located in Springfield, Ohio. When two men wearing ski masks entered the store, most of the employees, including Donald Little, fled and flagged down a passing SUV. Clifford Conley, the owner of the store, remained and exchanged shots with the two robbers, injuring one and eventually scaring away both. Meanwhile, the driver of the SUV, fearing pursuit by one of the

robbers, transported the fleeing employees several blocks away from the store and then stopped to dial 911 using his cell phone. While the SUV was stopped, a maroon car pulled up next to the SUV, and a passenger in the back seat rolled down his window, grinned at Little, who was standing on the side of the street, and then told the driver to "go."

In late 2003, Howard was arrested for the robbery. He was indicted on December 3, 2003, for attempted murder, in violation of Ohio Rev. Code §§ 2923.02 and 2903.02, and aggravated robbery, in violation of Ohio Rev. Code § 2911.01, both with a firearm specification, as well as for having a weapon while under disability, in violation of Ohio Rev. Code § 2923.13. In November 2003 and again in May 2004, Little's wife, Debra, contacted Officer Darwin Hicks, who had been assigned to investigate the robbery, and told him that Little could identify one of the "shooters." Debra had been in frequent contact with the police, as they were also investigating the murder of her brother and had recently informed her that Howard was likely involved. Soon after Debra's second call to the police, Little confirmed that he could make an identification, but only of a man in a car near the scene of the crime, not of a "shooter." Based on this information, Hicks asked Little to participate in a photo lineup. At the lineup, Little immediately identified Howard as the individual that he saw in the maroon car shortly after the robbery.

Before trial, Howard moved to suppress Little's identification, arguing that it was unreliable. Specifically, Howard argued that Little only had a few seconds to observe the man in the maroon car, that it was dark, that nearly two years had elapsed between the robbery and the identification, that there had been widespread media coverage of Howard's arrest for the robbery, and that the

identification was tainted by Little's knowledge that Howard may have been involved with the murder of Little's brother-in-law.

After a suppression hearing, the state trial court denied the motion and allowed Little to testify at trial about his pretrial identification of Howard. The trial court found that the photo array contained six persons of similar appearance, that Little had demonstrated excellent recall skills, that Little did not appear to have knowledge of any news coverage of the investigation, and that claims of improper motive were not supported by the suppression-hearing testimony. Finally, although Howard did not appear to press the argument that the procedures used during the identification were unduly suggestive, the trial court found that the circumstances of the lineup were not suggestive as to whom Little should identify and that Little's identification was made independently without any influence from Officer Hicks.

On June 4, 2004, Little was convicted of all three counts relating to the convenience-store robbery and sentenced to 25 years of imprisonment. Howard appealed to the Ohio Court of Appeals, alleging, *inter alia*, that he was denied his Fourteenth Amendment right to due process when the trial court failed to suppress the results of an unduly suggestive and unreliable photo lineup.

The Ohio Court of Appeals affirmed the judgment of the trial court. It began by summarizing the United States Supreme Court's two-part test for undue suggestiveness, stating that "[t]o warrant suppression of identification testimony, the accused bears the burden of showing [(1)] that the identification procedure was 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification' and [(2)] that the identification itself was unreliable under the totality of the circumstances." *State v. Howard*, No. 2004CA29, 2005 WL 1060621, at *2 (Ohio

Ct. App. May 6, 2005) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)); *see generally Neil v. Biggers*, 409 U.S. 188, 198–200 (1972) (summarizing earlier case law and providing a clear outline of the two-part test for undue suggestiveness).

Operating under this framework, the Ohio Court of Appeals found that the identification was not unduly suggestive and thus did not meet part one of the undue-suggestiveness test. The court dismissed Howard's claim that the photo array was suggestive because he was the only person with cropped hair, a mole, a wide mustache, sunken eyes, and a strip of hair running from his lower lip to his chin, noting that the suspects used in a photo array need not be exactly alike. Finding that the suspects were all similar in appearance, build, and complexion and that each had substantially similar facial hair, the Ohio Court of Appeals found nothing unduly suggestive about the photo array. *Howard*, 2005 WL 1060621, at *3–4.

The court also analyzed part two of the undue-suggestiveness test, additionally holding that the identification itself was reliable. The court based this finding on the fact that Little was only four or five feet from the maroon car, that he could see the car well, that he had enough time to observe the passenger inside the car, and that his subsequent identification at the photo lineup was immediate. The court was concerned that nearly two years had passed between the robbery and Little's identification but was reassured by Little's certainty during his identification and the lack of evidence that intervening events had affected Little's memory. *Id.* at*4–5.

Howard next appealed to the Ohio Supreme Court, which remanded his case for re-sentencing but declined to address his undue-suggestiveness claim. After re-sentencing, Howard appealed his new sentence, and the Ohio Court of Appeals affirmed. The Ohio Supreme Court then

denied Howard's application for leave to appeal. Finally, Howard sought collateral review of his

conviction on grounds unrelated to his undue-suggestiveness claim, which was denied.

**B**

Howard next filed a petition for writ of habeas corpus in the United States District Court for

the Southern District of Ohio. Howard's final amended petition put forward five grounds for relief,

reasserting as ground one Howard's undue-suggestiveness claim. Specifically, Howard alleged that

"[t]he lower court violated [his] right to due process when it overruled the motion to suppress

unreliable identification testimony, in violation of the Fifth and Fourteenth Amendments to the

United States Constitution and Section 16, Article I, of the Ohio Constitution."

A magistrate judge issued his R&R on November 9, 2011, which recommended conditionally

granting Howard's petition with respect to ground one and denying all other grounds for relief. The

R&R deferred to the Ohio Court of Appeals's finding "that the differences in physical appearance

among the suspects—by themselves—are not so significant to be deemed unduly suggestive."

Nonetheless, it found that the Court of Appeals's decision "was based on an unreasonable

determination of the facts because [it] ignored important evidence [concerning] the highly suggestive

manner in which the police learned that Little could identify one of the robbers." More specifically,

the R&R listed the following facts that it felt the Ohio Court of Appeals failed to consider:

> (1) Debra Little, not Donald Little, was the one who informed the police that her husband could identify one of the robbers, almost one and a half years after the robbery; (2) Debra Little specifically told the police that Howard was involved in the Oasis robbery and her husband could identify one of the *shooters*; (3) Debra Little potentially had an improper motive in assisting with Howard's conviction because Howard had been a suspect in her brother's murder; (4) although Officer Hicks testified that he did not learn that Little could identify one of the robbers until a few

> days before he presented the photo array, the police department, in fact, received that information months earlier, in November 2003; (5) Little testified that when the photo array was presented to him, he already knew that Howard had been charged with robbery; and (6) Little testified that he never provided Officer Hicks with a description of Howard.

(citations omitted). The R&R asserted that, based on the aforementioned facts, "the pretrial photographic identification was unduly suggestive."

The R&R went on to hold that the photo identification was also unreliable under a totality of the circumstances, as required by part two of the undue-suggestiveness framework, and also held that its admission was not harmless error. Thus, the R&R recommended granting Howard's habeas petition as to ground one, but denying the petition as to all other grounds for relief. The State objected to the magistrate judge's recommendation on ground one, arguing that a determination of undue suggestiveness should turn only on whether law-enforcement authorities acted to influence the eyewitness, not on the motives, biases, and personal knowledge of third parties.

After the magistrate judge issued the R&R, the Supreme Court decided *Perry*, which clarified that the due-process concerns on which the undue-suggestiveness framework is based arise only when an identification is "infected by improper *police* influence." 132 S. Ct. at 720 (emphasis added). By contrast, the Supreme Court stated that it would "not extend[] pretrial screening for reliability to cases in which the suggestive circumstances were not arranged by law enforcement officers." *Id*. at 720–21.

Based on this ruling, the district court, after restating the two-part test for undue suggestiveness, sustained the State's objection to the R&R. The district judge found that, in *Perry*, "the Supreme Court [had] clarified that 'what triggers due process concerns is *police use* of an

unnecessarily suggestive identification procedure,'" *Howard v. Warden*, No. 3:08-cv-424, 2012 WL 395186, at *5 (S.D. Ohio Feb. 7, 2012) (quoting *Perry*, 132 S. Ct. at 721 n.1 (emphasis added)), and thus that "law enforcement must be responsible for the suggestiveness of the lineup in order to trigger the due process check," *ibid*. (emphasis omitted). Accordingly, the district court held that "[t]he possibility that Little's identification was fueled by his or his wife's potential improper motive" was irrelevant to the undue-suggestiveness inquiry, as was his knowledge that Howard may have been involved in the Beverage Oasis robbery or his brother-in-law's murder. *Id*. at *7.

The court also emphasized that while these factors might be considered when determining whether an identification was *reliable*, an inquiry into reliability constituted part two of the undue-suggestiveness test, which should only be undertaken if undue suggestiveness is demonstrated in part one. Thus, the court explained that while Little's motive, his personal knowledge, and other potential defects in his story might impact the weight one ultimately afforded his identification, these factors would not affect a determination of whether the setting in which that identification was made was unduly suggestive.[1]

The district court therefore declined to adopt the R&R as to ground one and denied that ground for relief, adopted the R&R as to grounds two through five and denied those grounds for relief, and dismissed Howard's petition for writ of habeas corpus in its entirety. In addition, since

---

[1] The district court ended its inquiry there, stating that "[b]ecause the state courts' determination that the lineup was not unduly suggestive was reasonable, this Court need not consider the second step of the two-part [undue-suggestiveness] test." *Howard*, 2012 WL 395186, at *8. Nonetheless, the district court also noted that it found the identification reliable, in and of itself, and also that, in the event the identification was both unduly suggestive and unreliable, its admission was harmless error. *Id*. at *8 n.6.

the district court and magistrate judge disagreed as to ground one, the district court granted a certificate of appealability only with regard to that ground for relief. Howard now appeals the district court's denial of ground one of his petition, i.e., his undue-suggestiveness claim.

**II**

**A**

When assessing a district court's decision to grant or deny a habeas petition, we review its "legal conclusions *de novo* and its factual determinations for clear error," *McKinney v. Ludwick*, 649 F.3d 484, 487 (6th Cir. 2011), mindful that the more deferential standard of the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d), applies to the reasoning of the underlying state-court opinion.

As this circuit has made clear, if a state court issues a ruling on the merits of a habeas claim, a federal district court "may only grant habeas relief [if it finds] that the [state] court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 'was based on an unreasonable determination of the facts in light of the evidence that was presented in the State court proceeding.'" *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012) (quoting 28 U.S.C. § 2254(d)). In addition, "[t]he law in question must have been clearly established at the time the state-court decision became final, not after." *Ibid.* (citing *Williams v. Taylor*, 529 U.S. 362, 380 (2000)).

The Supreme Court has recently emphasized, and this court has reiterated, that the level of review permitted by AEDPA is narrower than even the plain language of that statute might suggest. *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011); *Peak*, 673 F.3d at 472. "A state court's

determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington*, 131 S. Ct. at 786 (internal quotation marks omitted). Thus, "if it is possible for a fairminded jurist to believe that the state court's rationale comports with [clearly established federal law, as determined by the Supreme Court,] we must deny relief." *Peak*, 673 F.3d at 472.

**B**

Over the past fifty years, the Supreme Court has developed a two-part test for determining whether the evidence gathered from an eyewitness identification must be excluded from trial due to the unduly suggestive nature of the identification procedure. To start, the Supreme Court has always embraced the baseline rule that "[t]he Constitution . . . protects a defendant against a conviction based on evidence of questionable reliability, not by prohibiting introduction of the evidence, but by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit." *Perry*, 132 S. Ct. at 723. Discrediting unreliable evidence at trial, rather than excluding it completely, has thus been the traditional method through which a defendant can ensure that the jury can accurately determine the facts.

Nevertheless, "the Supreme Court has carved out a narrow exception from this general rule for eyewitness identifications." *United States v. Washam*, 468 F. App'x 568, 570 (6th Cir. 2012). "Synthesizing previous decisions, [the Supreme Court] set forth in *Neil v. Biggers* and reiterated in *Manson v. Brathwaite* the [two-part] approach appropriately used to determine whether the Due Process Clause requires suppression of an eyewitness identification tainted by police arrangement." *Perry*, 132 S. Ct. at 724 (citations omitted). First, "due process concerns arise *only* when law

enforcement officers use an identification procedure that is both suggestive and unnecessary." *Ibid*. (emphasis added) (citing *Manson v. Brathwaite*, 432 U.S. 98, 107, 109 (1977); *Biggers*, 409 U.S. at 198). But "[e]ven when the police use such a procedure . . . , suppression of the resulting identification is not the inevitable consequence." *Ibid*. Rather, the second step of the undue-suggestiveness framework requires an inquiry into "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Biggers*, 409 U.S. at 199. If an identification resulting from an unduly suggestive procedure is nevertheless deemed reliable, it is admissible, "[n]otwithstanding the improper procedure" used by the police. *Perry*, 132 S. Ct. at 725; *see also Washam*, 468 F. App'x at 570–71 (explaining that "[t]o exclude [eyewitness] identifications, a defendant must show that the identification procedure was unduly suggestive and the identifications were not otherwise reliable").

The two-part test outlined above proceeds in a linear fashion. When determining whether to suppress an eyewitness identification, a court should not consider the reliability of eyewitness evidence, i.e., engage in part two of the test, unless the defendant satisfies the requirements of part one by proving that the police employed an unduly suggestive identification procedure. *See Perry*, 132 S. Ct. at 725–26; *see also United States v. Stamper*, 91 F. App'x 445, 462 (6th Cir. 2004). Put differently, if there is no showing that police employed an unduly suggestive procedure to obtain an identification, the unreliability of the identification alone will not preclude its use as evidence at trial. Instead, such unreliability should be exposed through the rigors of cross-examination.

Finally, the Supreme Court ruling in *Perry* clarified that "[t]he due process check for reliability . . . comes into play only after the defendant establishes improper *police* conduct." *Perry*,

- 11 -

132 S. Ct. at 726 (emphasis added). In so holding, the Supreme Court explicitly stated that it had "not extended pretrial screening for reliability [of evidence] to cases in which the suggestive circumstances were not arranged by law enforcement officers." *Id*. at 720–21. It reached this outcome by noting that the undue-suggestiveness framework is not premised on unreliability of evidence alone, but "turn[s] on the presence of state action and aim[s] to deter police from rigging identification procedures." *Id*. at 721. Thus, the Supreme Court limited the scope of part one of the undue-suggestiveness test—whether the identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification," *Simmons*, 390 U.S. at 384—to situations in which the police were the cause of the undue suggestiveness. "When no improper law enforcement activity is involved," reliability is better tested with tools such as "the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt." *Perry*, 132 S. Ct. at 721.

## C

Moving to the instant case, we find, and no party contests, that the Ohio Court of Appeals ruled on the merits of Howard's undue-suggestiveness claim. Thus, we apply the deferential standard of review prescribed by AEDPA § 2254(d) when reviewing that court's decision, asking only whether the Ohio Court of Appeals's ruling was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the state court.

**1**

Howard first alleges that the design of the photo array itself was unduly suggestive, arguing that differences in the photos presented influenced Little to select the photo of Howard. The Ohio Court of Appeals, when engaging in part one of the undue-suggestiveness analysis, focused only on these arguments, finding that "all the suspects [in the photo array] were similar in appearance and build" and had a complexion similar to Howard's. *Howard*, 2005 WL 1060621, at *4. It also found that "[e]ach of the suspects had facial hair which, although not identical, was substantially similar" and that "Howard's hair was not significantly longer than the other suspects." *Ibid*. Based on these factual findings, the court ruled that the police did not structure the photo array itself in an unduly suggestive manner. *Ibid*. Subsequently, the federal magistrate judge found that the Ohio court's determination of these facts was not "unreasonable" under the AEDPA standard, and the federal district court adopted that finding.

On appeal, Howard simply reiterates the claims he made before the Ohio court that "his picture sticks out" because he "is the only person who has prominent facial hair and his picture appears larger than the others." Appellant Br. at 27. He provides no new argument as to why the Ohio Court of Appeals's factual findings were unreasonable in light of the evidence that was presented in the State court proceeding, nor does he explain why it was an unreasonable application of clearly established federal law to rely on those facts and hold that the photo array itself was not unduly suggestive. He also makes no effort to explain why the decision of the magistrate judge and district court to credit those same facts was clear error. Thus, Howard's conclusory statements

clearly do not meet his burden of showing that the Ohio Court of Appeals made an unreasonable determination of the facts.

**2**

The bulk of Howard's argument on appeal is not focused on the photo array itself, but rather on the Ohio Court of Appeals's failure to consider certain extrinsic factors in determining whether the procedure used to obtain Little's identification was unduly suggestive. Howard's brief discusses at length the facts that Little and his wife, Debra, believed Howard to be responsible for the death of Debra's brother and that Debra was the one to inform the police that Little could identify a "shooter." Appellant Br. at 27. Howard's brief also focuses on local newspaper and television coverage of the Beverage Oasis robbery, which allegedly displayed Howard's picture and stated that he had been arrested in connection with the robbery. *Id*. at 28. These facts, in Howard's view, indicate, at the least, that Little was in some way predisposed to identify Howard due to information that he had read about the Beverage Oasis crime and, at the worst, that he intentionally planned to identify Howard in order to avenge his brother-in-law's death. *Id*. at 27–28.

Based on this theory, Howard argues that the police engaged in misconduct sufficient to render the photo array unduly suggestive when, "aware of this animus and motive of revenge, [they] develop[ed] a lineup that include[d] the Appellant." *Id*. at 27. Essentially, Howard asserts that when police know that an eyewitness is personally biased or otherwise unreliable, any identification procedure that the police later arrange with that eyewitness must be excluded as unduly suggestive. According to Howard, "knowing these motives and relationships imposes upon the police [a duty] to corroborate this information before basing their entire case upon a single identification." *Ibid*.

The Supreme Court, however, expressly rejected this argument in *Perry* when it made clear

that the general reliability of an identification is not a reason to exclude it unless the procedure used

to procure the identification is first proven to be unduly suggestive due to police misconduct. In fact,

the defendant in *Perry* put forward an argument almost identical to the one Howard now presses,

asserting that all identifications made under suggestive circumstances, regardless of who arranged

those circumstances, should be subjected to pretrial assessment for reliability. *Perry*, 132 S. Ct. at

727. The Supreme Court rejected this approach with the following reasoning:

> Perry's limitation would . . . involve trial courts, routinely, in preliminary examinations. Most eyewitness identifications involve some element of suggestion. Indeed, all in-court identifications do. Out-of-court identifications volunteered by witnesses are also likely to involve suggestive circumstances. For example, suppose a witness identifies the defendant to police officers *after seeing a photograph of the defendant in the press* captioned "theft suspect," or hearing a radio report implicating the defendant in the crime. Or suppose the witness *knew that the defendant ran with the wrong crowd* and saw him on the day and in the vicinity of the crime. Any of these circumstances might have "suggested" to the witness that the defendant was the person the witness observed committing the crime.

*Id*. at 727–28 (emphasis added). The Supreme Court rejected this vision of the courts' role and

instead clearly held that "[t]he due process check for reliability . . . comes into play only after the

defendant establishes improper *police* conduct." *Id*. at 726 (emphasis added). Especially noteworthy

is the Supreme Court's express statement that the two alleged defects on which Howard now

relies—an eyewitness's reading about a defendant in the press or having preconceived notions about

a defendant's criminal background—do not make an identification procedure unduly suggestive.

Because *Perry* makes clear that courts should not consider the extrinsic factors of which

Howard complains during step one of the undue-suggestiveness analysis, the Ohio Court of Appeals

did not engage in an unreasonable application of clearly established federal law when it refused to account for these factors in determining whether the procedure used during Little's identification was unduly suggestive. And since the Ohio Court of Appeals, when properly considering only the actions of the police and the design of photo array itself, reasonably determined that there was no undue suggestiveness, as discussed *supra* at pp. 12–14, Howard's failure to satisfy step one ends the inquiry.[2]

In closing, we recognize the Supreme Court's holding in *Williams*, 529 U.S. at 380, that the only federal law that we may examine when reviewing a state court's decision under AEDPA is law that was clearly established at the time the state-court decision became final. We further recognize that *Perry* was handed down over six years after the Ohio Court of Appeals made its ruling and thus that considering it could be claimed to run afoul of the *Williams* rule.

*Perry*, however, is arguably not a new rule of law under *Williams*, but rather a reaffirmation of what was already implicit in earlier decisions. *See Perry*, 132 S. Ct. at 720–21 (noting that the Supreme Court had "not extended pretrial screening for reliability to cases in which the suggestive circumstances were not arranged by law enforcement"); *Manson*, 432 U.S. at 100–01, 112 (mentioning exclusion of an identification only in the context of *police procedures* that are suggestive and stressing that a major purpose of exclusion is "deterrence . . . [such that] police will guard against unnecessarily suggestive procedures"); *Biggers*, 409 U.S. at 196–98 (framing the

---

[2] While the Ohio Court of Appeals went on to hold that the identification was also reliable in and of itself and that even if not, its admission was harmless error, those holdings were not necessary for it to dispense with Howard's claim, and we need not review them here.

inquiry as only whether "identification procedures" are unduly suggestive and not referring to any extrinsic factors).

To the extent *Perry* is new law, it simply demonstrates that, prior to its filing, there was at least some dispute as to whether step one of the undue-suggestiveness analysis should account only for actions of the police or also for those of third parties. Thus, before *Perry*, fairminded jurists could *and did* disagree on whether suggestive circumstances not caused by the police could be considered during step one of the undue-suggestiveness analysis, confirming that the Ohio Court of Appeals's decision satisfied the deferential AEDPA standard. And finally, it seems clear that the purpose of the *Williams* rule, rooted in the twin goals of "comity and finality," *Williams,* 529 U.S. at 381, is to prevent a federal court from second-guessing a state court in hindsight through the use of rules the benefit of which the state court did not have. In this case, *Perry* is being used not to question, but rather to affirm, the Ohio Court of Appeals's interpretation of the undue-suggestiveness framework.

In sum, the Ohio Court of Appeals's decision not to include the Littles' potentially improper motives and biased personal knowledge in its assessment of whether Little had participated in an unduly suggestive identification was not only a reasonable application of clearly established federal law—it was the application on which the Supreme Court itself later settled. Thus, Howard's undue-suggestiveness claim fails under the deferential AEDPA standard and, indeed, would fail even under *de novo* review.

**III**

For the aforementioned reasons, we AFFIRM the judgment of the district court.

- 17 -