NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0537n.06
No. 18-3130

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Oct 25, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| SAMUEL WHITT, | ) | OHIO |
| | ) | |
| Defendant-Appellee. | ) | |

Before: SILER, MOORE, and ROGERS, Circuit Judges.

**PER CURIAM**. Samuel Whitt has been charged with criminal interference with federal fair housing rights for spray painting racial epithets and otherwise vandalizing an apartment owned by an inter-racial couple who had recently evicted Whitt from that apartment. On Whitt's pretrial motion, the district court below—applying Federal Rules of Evidence 404(b) and 403—excluded evidence of misdemeanors committed three years earlier by Whitt and another man. The prior crimes involved the spray painting of racial epithets on apartment buildings, cars, and part of a church. The district court properly ruled that evidence of the earlier crime was not admissible to show the identity of the 2016 criminal. However, the evidence was admissible to show that, assuming Whitt committed the 2016 vandalism, he had the motive required for a conviction under the relevant federal statute, 42 U.S.C. § 3631. Moreover, the probative value of that evidence, assuming a proper cautionary instruction, is not substantially outweighed by a danger of unfair

prejudice under Federal Rule of Evidence 403. The evidence is therefore admissible for that limited purpose.

## I.

This case arises from racially charged property damage that Whitt allegedly committed in November 2016. Whitt had begun to rent an apartment in the Price Hill neighborhood of Cincinnati in August 2016. An interracial married couple owns the apartment; the wife is white, and the husband is black. On November 22, 2016, the couple evicted Whitt and his girlfriend due to their failure to pay rent. The owners traveled out of town the next day and returned on November 28, 2016 to a damaged apartment. Paint was "splattered on the walls, stairs, and appliances"; the banisters and carpet were damaged; there was a "knife stabbed into the floor"; quick-drying concrete had been "dumped into the bathroom drains and toilet"; and "[p]lumbing traps were removed from sinks and water was left running, causing extensive water damage." In addition to the physical damage, racially charged messages had been spray-painted on the walls, including swastikas and words like "'die n----r,' 'n----r n----r,' and 'white power.'"

The Government subsequently charged Whitt with use of fire under 18 U.S.C. § 844(i) and with criminal interference of the right to fair housing under 42 U.S.C. § 3631(a), a section of the Fair Housing Act. A person violates 42 U.S.C. § 3631(a) by "willfully injur[ing], intimidate[ing] or interfer[ing] with . . . [someone]" if both of the following are true: (1) the person acted "because of [one of the victim's]" protected characteristics, including "race[ or] color"; and (2) the person acted "because [the victim] is or has been selling, purchasing, renting, financing, occupying or contracting . . . any dwelling . . . ."

The Government proposes to use at least two bodies of evidence to show that Whitt possessed the requisite racial animus, in addition to the spray-painted racial words that are part of

the charged conduct. First, Whitt's Facebook account includes racist statements, such as "'[i]f u ain't white u ain't right' and the word 'n----r.'" The district court has denied Whitt's motion to suppress this evidence, and that decision is not before us in this appeal.[1]

Second, during the pretrial proceedings, the Government informed Whitt's counsel that it intended to introduce prior act evidence under FED. R. EVID. 404(b) during Whitt's upcoming trial. The prior act consists of Whitt's 2013 guilty plea and conviction of four misdemeanor counts of criminal damaging under Ohio Rev. Code § 2909.06(A)(1). In 2013, Whitt and a co-defendant had vandalized several cars, apartment buildings, and part of a church with spray paint. The vandalism occurred in the same Price Hill neighborhood of Cincinnati that was the site of the alleged crime in this case. The spray-painted images included a swastika and gang signs, such as "A.B." for Aryan Brotherhood. Although Whitt pleaded guilty to and admits his involvement in the 2013 crime, he contends that he was not responsible for drawing the swastika. The Government claims that the swastika from the 2013 crime is similar to the swastikas drawn in the 2016 crime, noting that "in 2013, [Whitt] spray-painted the swastika backwards and its right arm in the wrong direction, and, in 2016, he spray-painted two of the swastikas in the wrong direction and added an additional line to the right arm of one of them."

The Government sought to present the following evidence related to Whitt's 2013 conviction: (1) testimony from the groundskeeper of the vandalized church about the damage that Whitt and his co-defendant caused; and (2) testimony from the detective who conducted an interview with Whitt, during which Whitt confessed to committing part of the vandalism. The

---

[1] Whitt filed a motion to suppress the Facebook statements on July 18, 2017, which the district court denied on January 17, 2018. The district court partially agreed with Whitt's motion, determining that the affidavit that provided the basis for the search warrant lacked the "requisite nexus between the place to be searched and the items to be seized." However, the district court concluded that the good-faith exception to the exclusionary rule applied, and it therefore denied the motion to suppress.

Government argued that it should be permitted to introduce the 2013 evidence for the following purposes under FED. R. EVID. 404(b): (1) to show the identity of the perpetrator, on the theory that the racially charged acts of vandalism in 2013 and 2016 were sufficiently similar for a jury to conclude reasonably that Whitt was responsible for both of them; or (2) to show that Whitt was motivated by racial animus, since motive is an element that the government is required to prove under 42 U.S.C. § 3631(a). The Government also proposed a limiting instruction to mitigate the potential prejudicial effect of the 2013 evidence.

The district court granted a motion by Whitt to exclude the 2013 prior act evidence. The court determined that the 2013 evidence was not probative of identity for two reasons. First, the Government failed to produce sufficient evidence for a jury to conclude reasonably that Whitt, rather than his co-defendant, was personally responsible for drawing the swastika in 2013. Second, the alleged factual similarities between the 2013 and 2016 crimes were not sufficiently distinctive to constitute a signature that would make the 2013 evidence probative of identity. The district court also determined that the 2013 evidence was not probative of motive under FED. R. EVID. 404(b) because "it was the apartment owners' act of evicting [Whitt] that appears to [have] serve[d] as [Whitt's] motive for allegedly vandalizing the property." The district court concluded by excluding the 2013 evidence under the Fed. R. Evid. 403 balancing test. The district court found that regardless of whether the 2013 evidence was probative of motive or identity under 404(b), admitting the 2013 evidence would result in the very kind of unfair prejudice that Fed. R. Evid. 404(b) aims to avoid: the risk of the jury inferring that because Whitt participated in racially charged vandalism in the past, he "is racist and was therefore likely to do it again."

The Government appeals the district court's exclusion of the 2013 evidence. We have jurisdiction over this interlocutory appeal under 18 U.S.C. § 3731.

## II.

On the record before us, the 2013 prior act evidence should not be excluded.  Although the district court properly determined that the evidence was not probative of identity, the evidence was probative of motive.  Moreover, the probative value of the evidence was not substantially outweighed by the risk of unfair prejudice under FED. R. EVID. 403.

### A.  Motive

The fact that the 2013 evidence tends to prove that Whitt had a racial animus for the 2016 crime supports the admissibility of the evidence.  Although FED. R. EVID. 404(b)(1) prohibits the admission of prior act evidence to prove propensity based on character, FED. R. EVID. 404(b)(2) permits the admission of prior acts in a criminal case, provided that the prior act is admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Given the probative value of the 2013 evidence with respect to Whitt's motive, it is admissible under FED. R. EVID. 404(b)(2).

Most obviously, the 2013 prior-criminal-act evidence has probative value with respect to whether Whitt harbored a racial animus that could have motivated his alleged involvement in the 2016 crime.  The 2013 vandalism included racially charged symbols, such as a swastika and markings associated with white supremacist gangs.  Whitt pleaded guilty to and was convicted of criminal damaging arising from the racially charged vandalism, and he admitted responsibility for spray-painting "A.B." for "Aryan Brotherhood" during a 2013 police interview.

The probative nature of the motive evidence is particularly clear in a case involving a statute like 42 U.S.C. § 3631(a) in this case, under which the Government bears the burden of proving beyond a reasonable doubt that the defendant acted "because of" race.  When racial animus is an element of the charged crime, we have admitted prior act evidence under FED. R. EVID. 404(b)

to show motive. For example, in *United States v. Barrentine*, the defendants were convicted of a conspiracy to violate civil rights after they destroyed the foundation of the home of an African American family living in an all-white section of a city in Michigan. 39 F.3d 1182, 1994 WL 601339, at *1 (6th Cir. 1994). We affirmed the trial court's admission of prior act evidence of one defendant's racial animus under FED. R. EVID. 404(b) because the criminal statute at issue required the Government to prove that the defendants acted with the specific intent to "injure, oppress, threaten, or intimidate" the victims "in the free exercise or enjoyment" of their civil rights. *Id.*, at *3 (quoting 18 U.S.C. § 241). Other circuits have also ruled that where a defendant "was charged with a racially motivated crime, evidence of his racist views, behavior, and speech were relevant and admissible to show discriminatory purpose and intent, an element of the charges against him." *United States v. Dunnaway*, 88 F.3d 617, 619 (8th Cir. 1996) (citing cases). *See also United States v. Woodlee*, 136 F.3d 1399, 1410 (10th Cir. 1998).

It is true that the Government is in possession of other evidence of Whitt's racial animus, such as the racially inflammatory Facebook statements. However, the existence of alternative sources of evidence of racial animus does not undermine our determination of whether the 2013 evidence is itself probative of motive. Furthermore, the fact that Whitt could have committed the 2016 property damage in retaliation for his eviction does not defeat the 2013 evidence's probative value with respect to motive. 42 U.S.C. § 3631(a) requires the Government to show that Whitt was motivated by both racial animus and the eviction. The possibility that the Government will succeed in showing that Whitt retaliated against his landlords for the eviction should not preclude the Government from producing evidence that is relevant to the statute's motive requirement.

**B. Identity**

The district court, however, correctly determined that the 2013 prior act evidence was not probative to show that it was Whitt who committed the 2016 acts of vandalism in the first place. That would have to be shown by other evidence.

Under FED. R. EVID. 404(b), commission of similar crimes in the past *can* be used to show identity, i.e., that the defendant is the culprit rather than someone else, if the earlier crimes have particularly identifying characteristics also observed in the later crime. The district court in this case reasonably found that the 2016 crime did not have sufficient particularly identifying characteristics found in the earlier crimes that Whitt committed. The alleged factual similarities between the 2013 and 2016 crimes are not sufficiently unusual to justify the inference that the same person was responsible for both of them.

The Government alleges the following factual similarities between the 2013 and 2016 crimes: (1) the "use of spray-painted graffiti, laden with the word 'n----r,'"; (2) the use of "backwards, error-ridden swastikas"; and (3) the fact that the crimes occurred in the same neighborhood. Although the Government did not note the last fact in its motion to the district court, including it in the analysis will not affect our determination. Even if the 2013 and 2016 crimes occurred in the same neighborhood, the crimes were not similar enough to make the 2013 evidence probative of identity under FED. R. EVID. 404(b).

The alleged factual similarities are not distinctive or numerous enough to make the 2013 evidence probative of identity. As the district court noted, the swastika is "the most significant and notorious of hate symbols used to display views of white supremacy," meaning that the use of the swastika is not so unusual as to be probative of identity by itself. The fact that the 2013 and

2016 swastikas were drawn backwards does not overcome this problem, nor do the swastikas look sufficiently similar to justify the inference that the same person was responsible for drawing them.

Beyond the swastikas themselves, the other alleged factual similarities fall short of the factual similarities that have previously justified admitting prior act evidence to show identity. The racially hostile words were generic to racial hostility. Where words referred to particular gangs or circumstances, such words were unique to the 2013 or the 2016 vandalism. For example, the 2013 crime included references to gangs such as the Aryan Brotherhood and the Cincy Boys, whereas the 2016 crime featured spray-painted messages such as "white power" and "die n----r." The district court did not clearly err in finding an absence of particularly identifying commonality. In prior cases, we have found prior act evidence to be probative of identity only when the similarities between the prior act and the charged crime constituted standard conduct that "in combination, present[s] an unusual and distinctive pattern constituting a 'signature'." *United States v. Mack*, 258 F.3d 548, 553 (6th Cir. 2001). The Government fails to satisfy that standard here.

The facts of this case stand in sharp contrast to previous decisions upholding admission of prior-crime evidence for identity purposes. For example, in *United States v. Mack*, we affirmed the district court's admission of evidence of the defendant's participation in an unindicted bank robbery under FED. R. EVID. 404(b), when the defendant was charged with six counts of unarmed bank robbery. 258 F.3d at 551. The district court found multiple factual similarities between the unindicted bank robbery and the charged bank robberies, including the following: the robber "use[d] [ ] a ski mask in conjunction with a hooded sweatshirt"; the bank robber consistently "burst into the bank and leaped over the teller counter"; the robberies occurred in the same neighborhood; the robber was "always reported as being a young, athletic black male somewhere around six feet

tall, wearing bulky clothing"; the robber used similar commands and collected the stolen money himself; and the robber "always left through the back of the bank and appeared not to use a getaway car." *Id.* at 553-54. *See also United States v. Woods*, 613 F.2d 629, 634-35 (6th Cir. 1980); *United States v. Washam*, 468 F. App'x 568, 572 (6th Cir. 2012). Even when analyzed together, the three alleged factual similarities in this case are hardly as particularly identifying as the factual similarities in *Mack*.

The district court therefore properly concluded that the 2013 evidence is not probative of identity under Fed. R. Evid. 404(b)(2). Unlike the district court, however, we do not rely on Whitt's argument that—while he did participate substantially in the 2013 vandalism—he was not the one who spray painted the 2013 swastika in particular. Even if Whitt had painted the 2013 swastika, it was not so distinctly like the 2016 swastikas as to constitute a signature.

### C. FED. R. EVID. 403 Balancing

Finally, the probative value of the 2013 prior act evidence with respect to motive, as outlined in II. A above, is not substantially outweighed by the risk of unfair prejudice under FED. R. EVID. 403. When prior act evidence is probative of motive under FED. R. EVID. 404(b), the district court has the discretion to "exclude [the prior act] evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." FED. R. EVID. 403. Here, the risk of unfair prejudice does not substantially outweigh the probative value of the 2013 evidence because the 2013 evidence is highly probative of one of the elements of the charged crime: namely, whether Whitt committed the racially charged property damage in 2016 "because of" the race of his victims. 42 U.S.C. § 3631(a). Although we review the district court's § 403 balancing determination for an abuse of discretion, our application of that standard is informed in this case by the district court's legal underestimation of the highly probative value of the 2013 evidence

with respect to motive in this case. A balance that gives appropriate weight to the probative value compels the conclusion that the evidence should be admitted.

Neither the racial nature of the 2016 crime itself nor Whitt's racially inflammatory Facebook statements necessarily provides sufficient evidence for the Government to convict. We recognize that, in the Supreme Court's words, "[i]f an alternative were found to have substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered and exclude it if its discounted probative value were substantially outweighed by unfairly prejudicial risk." *Old Chief v. United States*, 519 U.S. 172, 182-83 (1997). But the alternatives in this case do not have the same or greater probative value with respect to 42 U.S.C. § 3631.

The most obvious alternative basis for showing the requisite motive is the racist nature of the spray painting in the 2016 crime itself. But in light of our decision in *United States v. Miller*, the racially charged nature of the 2016 crime might be argued not to amount to sufficient evidence of the alleged perpetrator's racial animus. 767 F.3d 585 (6th Cir. 2014). In *Miller*, we determined that it was not harmless error for the trial court to fail to instruct the jury that the government bore the burden of proving religious animus to be a but-for cause of a series of assaults on members of the Amish community. *Id.* at 589. In our explanation of why the error was not harmless, we noted that the fact that the "means of assault involved religious symbolism" did not necessarily demonstrate that the assaults were motivated by religious animus. *Id.* at 596. It rather "confirms only that [the perpetrator] knew how best to hurt [the victims]." *Id.* The Government should be able to forestall a similar argument by Whitt: that the use of swastikas and racially charged language did not necessarily indicate that the perpetrator of the 2016 crime possessed racial animus, but that Whitt could equally as well have employed racially charged images to offend the

apartment owners as deeply as possible. Such an argument would be much weakened by prior evidence of racial animus against victims who had not harmed Whitt.

Second, the Facebook statements also fail to provide evidence of racial animus that could rival that of the 2013 evidence. Whitt's Facebook messages are probative of Whitt's racism because they included the use of the word "n----r," along with phrases such as "[i]f u ain't white u ain't right." However, the Government must do more than show that Whitt harbored racist attitudes to obtain a conviction under 42 U.S.C. § 3631(a). Under the statute, the Government bears the burden of proving beyond a reasonable doubt that Whitt's racial animus was great enough to be a but-for cause of the crime. The Government must therefore prove that Whitt's racial animus motivated him to destroy his landlords' apartment and deface the property with hate symbols. Prior participation in racially charged vandalism is far more probative of that level of racial animus than a handful of racially charged Facebook messages would be.

Our holding assumes that the district court will give the jury an appropriate limiting instruction. We recognize that admitting the 2013 evidence would pose some risk that a jury would improperly use the prior act evidence to infer that because Whitt committed racially charged vandalism in the past, he must have done so in 2016. *See United States v. Haywood*, 280 F.3d 715, 723 (6th Cir. 2002). However, including a limiting instruction would sufficiently mitigate any risk of the jury improperly relying on the 2013 evidence for propensity reasoning. In the district court, the Government proposed the following limiting instruction:

> You have heard testimony that the defendant committed a crime other than the ones charged in the indictment. If you find the defendant did that crime, you can consider the evidence only as it relates to the Government's claim on the defendant's motive and identity. You must not consider it for any other purpose.
>
> Remember that the defendant is on trial here only for Criminal Interference with the Right to Fair Housing and Attempted Use of Fire, not the other acts. Do not

return a guilty verdict unless the Government proves the crimes charged in the indictment beyond a reasonable doubt.

We have previously affirmed the admission of prior act evidence in cases in which similar limiting instructions were included. For example, in *United States v. Ramer*, we affirmed the trial court's admission of evidence of the defendant's prior conviction of the fraudulent sale of oil and gas interests under FED. R. EVID. 404(b). 883 F.3d 659, 669-71 (6th Cir. 2018). We noted that the trial court mitigated the risk that the jury would consider the evidence for an improper purpose by instructing the jury to consider the prior act evidence only "as it relates to the government's claim on the defendant's intent, knowledge, identity, absence of mistake, or lack of accident." *Id.* at 671. *See also United States v. Barnes*, 822 F.3d 914, 924 (6th Cir. 2016); *United States v. Abboud*, 438 F.3d 554, 583 (6th Cir. 2006); *United States v. Myers*, 102 F.3d 227, 233-34 (6th Cir. 1996). Similarly, admitting the 2013 evidence with a limiting instruction like that proposed by the Government (of course modified to refer to motive but not intent) would enable the Government to make use of the 2013 evidence's highly probative value with respect to motive, while mitigating the risk of the jury improperly relying on the 2013 evidence to infer propensity based on character.

**III.**

The order of the district court is reversed and the case is remanded to the district court for proceedings consistent with this opinion.

**ROGERS, Circuit Judge, dissenting**. I join Parts II. A and B of the majority opinion. However, affirmance is required because the district court did not abuse its discretion in ruling that the risk of unfair prejudice from a propensity inference substantially outweighs the probative value of the 2013 prior act evidence with respect to motive. Because of the highly discretionary nature of this balancing process, the district court's decision is afforded great deference. *E.g.*, *United States v. Bell*, 516 F.3d 432, 445 (6th Cir. 2008).

The 2013 evidence would pose a significant risk of producing the kind of propensity reasoning that FED. R. EVID. 404(b) seeks to avoid: namely, that because Whitt had committed racially charged vandalism in the past, he is more likely than otherwise to be responsible for the racially charged vandalism in this case. Moreover, the probative weight of the 2013 evidence of motive is lessened by the availability of other evidentiary sources proving motive: the racial epithets present in the very crime at issue, as well as Whitt's Facebook statements. *See Old Chief v. United States*, 519 U.S. 172, 182-83 (1997).

Our analysis in *Miller* does not undermine the probative value with respect to motive of the racially hostile acts charged in this case. In *Miller*, we merely asserted that the use of hate symbolism might not be *conclusive* evidence of the perpetrator's animus, and we did so while examining a legal issue entirely different from the admissibility of prior act evidence under FED. R. EVID. 404(b) and 403. 767 F.3d 585, 596 (6th Cir. 2014). Cases such as *Barrentine* and *Woodlee* are distinguishable because the government did not possess alternative sources of evidence of the defendant's racial animus that would have been less prejudicial than the prior act evidence. *United States v. Barrentine*, 39 F.3d 1182, 1994 WL 601339, at *3 (6th Cir. 1994); *United States v. Woodlee*, 136 F.3d 1399, 1410 (10th Cir. 1998).

Furthermore, the Government's proposed limiting instruction does not sufficiently mitigate the danger of jury reliance on the 2013 evidence to infer propensity improperly in this case based on character. A mere admonishment to the jury that they are not to consider the prior act evidence for "any other purpose" than motive will hardly be enough to prevent them from doing so. Even in the context of overturning a district court's admission of prior act evidence, we have reasoned that "[a] limiting instruction will minimize to some degree the prejudicial nature of evidence of other criminal acts; it is not, however, a sure-fire panacea for the prejudice resulting from the needless admission of such evidence." *See United States v. Jenkins*, 345 F.3d 928, 939 (6th Cir. 2003) (quoting *United States v. Haywood*, 280 F.3d 715, 724 (6th Cir. 2002)).

Accordingly, I would affirm the district court's exercise of its discretion in granting Whitt's motion to exclude the 2013 prior act evidence.